SANFORD MILLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Miller v. Commissioner
Docket No. 5884-79.
United States Tax Court
T.C. Memo 1981-15; 1981 Tax Ct. Memo LEXIS 728; 41 T.C.M. (CCH) 714; T.C.M. (RIA) 81015; January 19, 1981
Gerald E. Rudman, for the petitioner. David N. Brodsky, for the respondent. TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: Respondent determined a deficiency in petitioner's income tax for 1974 in the amount of $ 31,015.83. After concessions by the parties, the issue presented is whether the transfers of certain items to petitioner's former wife, in connection with their divorce in 1974, constitute deductible alimony payments under section 215. [1]
This case was submitted as fully stipulated pursuant to Rule 122, Tax Court Rules of Pracice and Procedure. The stipulated facts and *730 exhibits are incorporated herein by this reference. Petitioner resided in Bangor, Maine, at the time the petition herein was filed. He timely filed his 1974 Federal income tax return with the Internal Revenue Service Center, Andover, Mass.
Sometime prior to 1965, petitioner married Lorraine S. Miller (Lorraine). He and Lorraine were divorced on July 14, 1965. By reason of the divorce judgment, petitioner solely owned the residence located at 74 Royal Road in Bangor. Petitioner and Lorraine remarried on October 21, 1968. This marriage terminated by divorce on May 30, 1974. The Decree of Divorce of the Superior Court of Maine, in relevant part, ordered that petitioner-- pay to Lorraine Miller as alimony the sum of One Hundred Fifty ($ 150.00) Dollars per week so long as she may remain unmarried; and in addition thereto, the sum of Ninety Six Thousand ($ 96,000.00) Dollars payable in equal annual installments of Eight Thousand ($ 8,000.00) Dollars, the first payment to be made May 30, 1975; and in further addition thereto, Sanford Miller shall convey to Lorraine Miller, subject to any mortgages or other encumbrances of record, but free of any real estate taxes for the *731 municipal year 1974, the family residence located at, known and numbered as 74 Royal Road, Bangor, Maine, provided however, that said Sanford Miller shall be responsible for payment of the outstanding mortgage against the residence according to its terms, and shall install a telephone in the family residence for the account and in behalf of Lorraine Miller; and shall provide Lorraine Miller with a 1974 Chevrolet station wagon in place of her present automobile; such payments and alimony shall constitute full satisfaction of all claims for alimony for a period of twelve (12) years from the date of this decree, and during said period the said Lorraine Miller shall not commence any action seeking an increase in alimony payments. In 1974, petitioner implemented the foregoing as follows: (a) He conveyed to Lorraine the residence, which had a net value of $ 33,915.55, together with furniture and fixtures contained therein, which had a value of $ 3,500. (b) He purchased for Lorraine a station wagon at a cost of $ 5,582.90. The question for decision is whether the petitioner is entitled to a deduction for alimony under section 215 in the agreed amount of $ 42,998.45, representing *732 the aggregate value of the items set forth above. [2]
Section 215 allows a divorced husband to deduct payments that he makes to his former wife during the taxable year and that are includible in her gross income under section 71. Section 71(a) requires the former wife to include in her gross income periodic payments under a divorce decree received in discharge of a legal obligation imposed on the husband because of the marital relationship. The regulations refine this further, limiting this treatment to "payments made because of the family or marital relationship in recognition of the general obligation to support which is made specific by the decree, instrument, or agreement." Section 1.71-1(b)(4), Income Tax Regs.; Warnack v. Commissioner,71 T.C. 541, 550 (1979). Section 71(c)(1) provides that, in general, installment payments discharging a principal sum specified in the decree are not to be treated as periodic payments. However, if the specified principal sum is to be paid, or may *733 be paid, over a period ending more than 10 years from the date of the decree, the installment payments shall be treated as periodic payments under section 71(a) to the extent of 10 percent of the principal sum. Section 71(c)(2). At the outset, we think it will facilitate matters if we first dispose of an argument by petitioner relating to Maine law. The parties have stipulated that, at the time of the conveyance to Lorraine, the residence was not marital property within the meaning of tit. 19, Me. Rev. Stat. Ann., sec. 722-A. Based upon this stipulation and the further provision of section 722-A that in a divorce proceeding "the court shall set apart to each spouse his property and shall divide the marital property," petitioner contends that the divorce court had no power to deal with the residence and the station wagon as part of a property settlement and that, consequently, the provisions in the divorce decree herein relating to such items [3] can only be interpreted to mean that they were intended to provide Lorraine with alimony. Although it may well be that petitioner's position in regard to Maine law is correct ( Grishman v. Grishman,407 A.2d 9 (Me. 1979); *734 Tibbetts v. Tibbetts,406 A.2d 70 (Me. 1979); Zillert v. Zillert,395 A.2d 1152 (Me. 1978)), we find it unnecessary to resolve this issue. Assuming arguendo that petitioner's position in this respect is correct, [4] we nevertheless hold that respondent should prevail. See also footnote 7, infra.
*735 Petitioner puts great emphasis on the fact that the divorce decree herein, after providing for the monetary and property payments, specified that "such payments and alimony shall constitute full satisfaction of all claims for alimony." (Emphasis added.) But the fact that the property transfers in question may have been labeled "alimony" is not determinative. It has been repeatedly held that what constitutes alimony for Federal tax purposes is a question of fact in each case and does not turn upon labels which the parties or local courts may have used. Taylor v. Campbell,335 F.2d 841, 845 (5th Cir. 1964); Martin v. Commissioner,73 T.C. 255, 262 (1979), and cases cited thereat; Thompson v. Commissioner,50 T.C. 522, 525 (1968). There are two possible interpretations which might be accorded the divorce decree. The first is that it should be given a unitary reading, with the provisions relating to the residence and station wagon considered an integral part and extension of the provision relating to weekly alimony and/or the provision for the payment of $ 96,000 in installments over a period of more than 10 years (thereby falling, *736 according to petitioner, within the scope of section 71(c)). The second is that the provision relating to the residence and station wagon should be treated as independent of the other provisions and as constituting a lump-sum payment which is neither "periodic" within the meaning of section 71(a) nor an "installment payment" within the meaning of section 71(c). The decided cases are clear that "payments pursuant to a divorce decree are not treated as a single stream but rather each type of payment is treated separately and subjected to individual analysis to determine its proper characterization." See Bernstein v. Commissioner,622 F.2d 442, 445 (9th Cir. 1980), affg. a Memorandum Opinion of this Court, and cases cited thereat. See also Tate v. United States,207 F. Supp. 426, 430 (E.D. Tenn. 1962); Schwab v. Commissioner,52 T.C. 815, 818 (1969), affd. sub. nom. Houston v. Commissioner,442 F.2d 40 (7th Cir. 1971). At the very least, it is incumbent upon petitioner, who has the burden of proof, to show that the unitary rule should be applied. Renstrom v. United States,220 F. Supp. 688 (D. Neb. 1963); *737 Martin v. Commissioner,73 T.C. at 265; Rule 142(a), Tax Court Rules of Practice and Procedure.[5] We think that a proper reading of the decree involved herein clearly indicates that the provisions respecting the residence and the station wagon were intended to operate separate and apart from the other provisions. We conclude that, even though the transfer of the residence, its contents, and the station wagon is considered to be alimony under state law (see p. 5, supra), such transfer constituted a lump-sum payment nondeductible under section 215. Van Orman v. Commissioner,418 F.2d 170 (7th Cir. 1969), affg. a Memorandum Opinion of this Court; Baer v. Commissioner,196 F.2d 646 (8th Cir. 1952), affg. on this issue 16 T.C. 1418 (1951); Lounsbury v. Commissioner,37 T.C. 163 (1961), affd. 321 F.2d 925 (9th Cir. 1963). *738 Petitioner's reliance on Thompson v. Commissioner,supra,Porter v. Commissioner,T.C. Memo. 1966-79, and Swendseen v. Commissioner,T.C. Memo. 1978-501, is misplaced, All of those cases are clearly distinguishable. In Thompson and Porter, there was a single provision specifying an aggregate dollar amount payable over a period of more than 10 years, and we held that the fact that the initial payment required was larger than the later payments did not prevent that payment from qualifying under section 71(c)(2). [6] In Swendseen, the provision in question was found to be subject to a contingency and, therefore, although it did not meet the requirements of section 71(c) that a principal sum be specified (see Suarez v. Commissioner,68 T.C. 857, 865 (1977)), it did satisfy the "periodic" requirement of section 71(a). No comparable contingency is involved herein. [7]
*739 Similarly, we find unpersuasive petitioner's attempt to distinguish the cases principally relied upon by respondent. In Van Orman v. Commissioner,supra, the taxpayer was required to pay his former spouse monthly alimony and in addition to provide her within 10 years a home to cost no more than $ 40,000. In the taxable year at issue, he bought a house for $ 37,500, making a downpayment of $ 7,700 and financing the balance by way of borrowing from third parties secured by two mortgages. The court of appeals held that neither the downpayment nor the payments on the mortgage were "periodic" and consequently were not deductible. It articulated its rationale in words particularly applicable to the instant case (418 F.2d at 171-172): Taxpayer's obligation was to provide a home of a value not to exceed $ 40,000 within ten years of the date of the divorce decree. Assuming, arguendo, that the down payment was in discharge of a support rather than a property obligation, it would not constitute a periodic payment. The obligation was to provide a lump sum to the ex-wife.It was not a periodic payment by which the ex-wife shared in the husband's income. The *740 mere fact that taxpayer chose to pay off the basic obligation in conveniently small amounts does not change the character of the basic obligation. It simply permitted taxpayer to arrange for the basic capital transfer in convenient payments. This may not be used as a method of imposing an unjust tax burden upon the ex-wife. Lounsbury v. Commissioner of Internal Revenue, 321 F.2d 925 (9 Cir., 1963). In Renstrom v. United States,supra, the taxpayer was obligated to make payments to his former spouse of $ 138,000 over a period of 11 years at the rate of $ 1,500 per month for six years and $ 500 per month for the next five years and was further obligated to provide her with a home at a cost not to exceed $ 35,000, which latter obligation he performed shortly after the entry of the divorce decree. The court rejected the taxpayer's contention that the principal sum under section 71(c)(2) included the $ 35,000 paid for the house, stating (220 F. Supp. at 692): The court has a good deal of trouble visualizing or logically considering the conveyance of the $ 35,000.00 house as an installment payment in the sense that each $ 1,500.00 and *741 $ 500.00 payment is an installment payment. It should be noted in this connection that the house and the installment payment are treated separately in the divorce decree. This detracts from any contention that the house was one in a series of installment payments. * * * [8]
*742 We think that any analysis of Ellis v. Commissioner,T.C. Memo. 1980-145, Fisher v. Commissioner,T.C. Memo. 1978-492, and Keebler v. Commissioner,T.C. Memo. 1969-198, also discussed by the parties, would be superfluous, since they appear to have only peripheral application to the instant case. Decision will be entered under Rule 155.
Footnotes
1. All section references, unless otherwise indicated, are to the Internal Revenue Code of 1954, as amended and in effect during 1974.↩
2. Respondent has not contested petitioner's further deduction of $ 4,500, which apparently represented $ 150 per week made during the period May 30 to December 31, 1974.↩
3. The contents of the residence were not specifically dealt with in the decree, but respondent has made no argument that they should be treated separately from the residence and the station wagon. ↩
4. Accordingly, and for the additional reason that respondent has not raised any issue with respect thereto, we have not directed our attention to the impact of a provision in the divorce decree requiring Lorraine to convey to petitioner any interest she might have had in the family summer residence and two other parcels of real property. Cf. Martin v. Commissioner,73 T.C. 255 (1979). Similarly, we have not attempted to analyze the impact on the above-quoted provision of section 722-A or the provision of Me. Rev. Stat. Ann., tit. 19, sec. 721, that a court "may order instead of alimony,↩ a specific sum to be paid or to be payable in such manner and at such times as the court may direct." (Emphasis added.)
5. That this case was fully stipulated does not relieve the taxpayer of his burden. See Kelley v. Commissioner,281 F.2d 527, 529 (9th Cir. 1960), affg. a Memorandum Opinion of this Court; Martin v. Commissioner,supra↩ note 4. The record herein contains no evidence of the considerations upon which the divorce court acted, including any negotiations which may have taken place between the parties.
6. Section 71(c)(2) recognizes that installment payments may be unequal in amount by limiting the taxability of such payment to the receiving spouse to 10 percent of the principal amount, and, indeed, we applied that limitation in Thompson. See also sec. 1.71-1(d)(5)↩, Ex. (4), Income Tax Regs. 7. Although in his original brief, petitioner makes a passing reference to contingency based upon the power of the divorce court to modify the decree (see Me. Rev. Stat. Ann., tit. 19, sec. 721↩), petitioner did not pursue the matter further and, indeed, concluded his reply brief with the statement that "state law is not used to prove that the payment was contingent, rather it is used to prove that the payments were in discharge of a support obligation." Consequently, we do not consider the impact, if any, of the foregoing contingency under state law.
8. Petitioner seeks to distinguish this case by pointing to a statement by the court that the conveyance of the house "was more in the nature of a division of property." Renstrom v. United States,220 F. Supp. 688, 692 (D. Neb. 1963). (Emphasis added.) Such attempted distinction reflects an unwarranted effort by petitioner to draw the implication from the decided cases that if a provision is not in settlement of "property rights," it must necessarily be considered alimony. Petitioner reads the cases, and particularly Warnack v. Commissioner,71 T.C. 541 (1979), too broadly. A provision can be, as was said in Renstrom, "in the nature of a division of property" or, as we said in Norton v. Commissioner,16 T.C. 1216, 1218 (1951), affd. 192 F.2d 960 (8th Cir. 1951), "in the nature of division of capital," and, therefore, not necessarily considered alimony even if it is not a settlement of property rights as such. Compare Schottenstein v. Commissioner, 75 T.C.     (Dec. 29, 1980↩).